**UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND**

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

February 5, 2016

Shannon Brown
805 McKim Street
Baltimore, MD 21202

Aparna V. Srinivasan, Esq.
Social Security Administration
Altmeyer Building
6401 Security Boulevard, Room 617
Baltimore, MD 21235

      Re: *Shannon Brown o/b/o Y.S.B. v. Commissioner of Social Security*,
          Civil No. SAG-15-1683

Dear Ms. Brown and Counsel:

    On June 10, 2015, Shannon Brown petitioned this Court to review the Social Security Administration's ("SSA") denial of her claim for Children's Supplemental Security Income ("SSI") on behalf of her minor child, Y.S.B. (ECF No. 1). I have considered the Commissioner's Motion for Summary Judgment. (ECF No. 19). Ms. Brown has not filed a response.[1] I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were applied. 42 U.S.C. § 405(g); *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 1996) (superseded by statute on other grounds); *Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir. 1987). Under that standard, I will grant the Commissioner's motion and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

    Ms. Brown protectively filed an application for Children's SSI on behalf of Y.S.B. on October 7, 2011. (Tr. 233-40). Her claim was denied initially and on reconsideration. (Tr. 153-60, 168-69). A hearing was held on January 27, 2014, before an Administrative Law Judge ("ALJ"). (Tr. 76-128). Following the hearing, the ALJ issued an opinion denying benefits on February 5, 2014. (Tr. 57-70). Because the Appeals Council ("AC") denied Ms. Brown's request for review, (Tr. 1-6), the ALJ's decision is the final, reviewable decision of the Agency.[2]

---

[1] On December 11, 2015, a Rule 12/56 letter was sent to Ms. Brown advising her of her right to file a response to the Commissioner's motion within seventeen (17) days from the date of the letter. (ECF No. 20). No response was received.

[2] The AC also received and reviewed additional exhibits that were not a part of the record before the ALJ. (Tr. 5-7). The AC must review additional evidence if it is "(a) new, (b) material, and (c) relates to the period on or before the

The ALJ evaluated Ms. Brown's claim using the three-step sequential process for claims involving Children's SSI, as set forth in 20 C.F.R. § 416.924. First, the ALJ determines whether the child has engaged in substantial gainful activity. 20 C.F.R. § 416.924(a), (b). If the child has not engaged in substantial gainful activity, the ALJ proceeds to step two and determines whether the child has a severe impairment or combination of impairments. 20 C.F.R. § 416.924(a), (c). At step two "[i]f [the child] do[es] not have a medically determinable impairment, or [the] impairment(s) is a slight abnormality or combination of slight abnormalities that cause[] no more than minimal functional limitations," then the ALJ will determine that the child is not disabled. However, if the ALJ determines that the child has a severe impairment or combination of impairments, then the ALJ proceeds to step three of the evaluation to determine whether the child's impairment or combination of impairments meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). 20 C.F.R. § 416.924(d).

For children, listings describe impairments that cause marked and severe functional limitations. 20 C.F.R. § 416.924. In general, a child's impairment(s) is of "listing-level severity" if it "causes marked limitations in two domains of functioning or an extreme limitation in one domain of functioning." *Id.* However, an impairment may meet a listing even if it does not result in marked or extreme limitations if the listing in question does not require such limitations to establish that the impairment is disabling. *Id.* If an impairment(s) does not meet a listing, an ALJ may determine that the impairment(s) medically equals a listed impairment if: (1) there are other findings related to the child's impairment, not included in the listing requirements, that are at least of equal medical significance to the required criteria; (2) the child has an impairment not described in the listings with findings that are at least of equal medical significance as a closely analogous listed impairment; or (3) if the child has a combination of impairments, none of which meets a listing, but which result in findings that are at least of equal medical significance as a closely analogous listed impairment. 20 C.F.R. § 416.926.

If an impairment(s) neither meets nor equals a listing, an ALJ may determine that the child's impairment(s) is functionally equivalent to a listed impairment. The ALJ must evaluate the "whole child" when making a finding regarding functional equivalence. Generally, the ALJ must first consider how the child functions daily in all settings as compared to children of the same age who do not have the impairments. In other words, the ALJ considers the child's activities including everything a child does at home, at school, and in the community on a daily basis. Next, the ALJ must assess the child's capacity to perform or not perform activities and assigns each activity to any or all of the six domains or broad areas of functioning. SSR 09–1p,[3] 2009 WL 396031 at *2 (Feb. 17, 2009). The six domains are (i) acquiring and using information,

---

date of the ALJ's decision." *Wilkins v. Sec'y, Dept. of Health & Human Servs.*, 953 F.2d 93, 95-96 (4th Cir. 1991). Evidence is "new" if "it is not duplicative or cumulative." *Id.* at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Id.* Social Security regulations, however, "[do] not require the [AC] to do anything more than what it did in this case, *i.e.*, consider new and material evidence . . . in deciding whether to grant review." *Meyer v. Astrue*, 662 F.3d 700, 706 (4th Cir. 2011) (internal quotation marks omitted). The AC is not required to take any specific action in response to new and material evidence, and is not required to provide a detailed explanation of its evaluation. *Id.*

(ii) attending and completing tasks, (iii) interacting and relating with others, (iv) moving about and manipulating objects, (v) caring for yourself, and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

In evaluating the child's ability to function in each domain, SSA will consider information in answering the following six questions.

(i) What activities is the child able to perform?
(ii) What activities is the child not able to perform?
(iii) Which of the child's activities are limited or restricted compared to other children his or her age who do not have impairments?
(iv) Where does the child have difficulty with his or her activities-at home, in childcare, at school, or in the community?
(v) Does the child have difficulty independently initiating, sustaining, or completing activities?
(vi) What kind of help does the child need to do his or her activities, how much help does he or she need, and how often does he or she need it?

*Id.* § 416.926a(b)(2)(i)-(vi). An impairment functionally equals a listing-level severity if it is determined that a claimant has *marked* limitations in two domains or an extreme limitation in one domain.  *Id.* § 416.926a(d).

The Defendant asserts that the Commissioner's final decision is supported by substantial evidence and should be affirmed.  After a review of the record and the ALJ's decision, I agree with the Commissioner for the reasons discussed below.  The ALJ proceeded in accordance with applicable law at all three steps of his evaluation.  The ALJ's findings at steps one and two favored Ms. Brown's claim.  At step one, the ALJ found that Y.S.B. had not engaged in any substantial gainful activity at any time relevant to the application. (Tr. 60).  At step two, the ALJ found that Y.S.B. suffered from the severe impairments of attention deficit hyperactivity disorder ("ADHD") and learning disorder.  *Id.*  At step three, however, the ALJ found that Y.S.B. did not have an impairment or combination of impairments that met any listing.  *Id*.  The ALJ specifically considered Listing 112.11 for ADHD.

The ALJ then proceeded to determine whether Y.S.B.'s impairments functionally equal a listing.  The ALJ first evaluated the "whole child" in making findings regarding functional equivalence.  In doing so, the ALJ reviewed the testimony of Ms. Brown and Y.S.B. regarding her daily activities, her behavior at home, and her performance in school.  The ALJ found that Ms. Brown's testimony was inconsistent with the medical evidence of record and gave it little weight. (Tr. 61).  Likewise, the ALJ noted that Y.S.B.'s performance when asked to count and recite the alphabet at the hearing, during which she was only able to count to twenty under pressure and only able to recite the alphabet through letter H, was inconsistent with evidence that she could read at a first grade level. (Tr. 62).

Next, the ALJ reviewed the evidence of record detailing significant improvement in Y.S.B.'s behavior and performance in school after starting to take Focalin to treat her ADHD. Specifically, the ALJ noted that Y.S.B.'s marks in school improved from being "unsatisfactory" in several subjects at the beginning of the 2011-2012 school year, to achieving all "satisfactory" or "excellent" marks by the end of the school year. (Tr. 62). Additionally, notes from testing in 2013 continued to demonstrate improvements in Y.S.B.'s math performance and a decrease in the gap between her actual grade level and performance grade level. *Id.* The ALJ also reviewed Y.S.B.'s performance on psychological and intellectual examinations. On multiple occasions, results showed that she had a full-scale IQ score of 81, which is in the low-average range of abilities. (Tr. 63). Even so, a school psychologist opined that she had a Global Assessment of Functioning ("GAF") score of 90. *Id.*

The ALJ also reviewed the medical opinions of evidence. The ALJ gave "significant weight" to assessments by State agency medical examiners who found that Y.S.B. had less than marked limitations in Acquiring and Using Information, Interacting and Relating with Others, and Caring for Yourself, and no limitations in Health and Physical Well-Being and Moving About and Manipulating Objects. (Tr. 64). The ALJ found that Y.S.B. had a greater limitation in Attending and Completing Tasks than that opined by the State agency examiners, but otherwise found that their opinions were consistent with Y.S.B.'s testimony and his review of the record. *Id.* Although not acceptable medical sources, the ALJ also considered the opinions of Y.S.B.'s kindergarten and first grade teachers as provided in Teacher Questionnaires. (Tr. 63). Y.S.B.'s teachers reported some limitations in the areas of Acquiring and Using Information, Attending and Completing Tasks, and Interacting and Relating with Others. *Id.* The ALJ did not weigh the opinions of Y.S.B.'s teachers since they are not acceptable medical sources, but noted that they had the opportunity to observe Y.S.B.'s abilities and limitations in the classroom in arriving at their opinions. *Id.* Finally, the ALJ gave little weight to an assessment conducted by in-schools therapists, Ms. Bufkin, LCSW, and Ms. McBride, APRN-NP/PHM, and an additional assessment conducted by Ms. McBride. *Id.* The ALJ noted that Ms. Bufkin and Ms. McBride were not acceptable medical sources. And, while the ALJ agreed with their assessment that Y.S.B. has marked limitations in Attending and Completing Tasks, he found that the remainer of their opinions were inconsistent with the improvement demonstrated in the record. *Id.*

After reviewing the evidence as related to the "whole child," the ALJ considered the six domains of functional equivalence. The ALJ found that Y.S.B. had (i) *less than marked* limitations in acquiring and using information; (ii) *marked limitations* in attending and completing tasks; (iii) *less than marked* limitations interacting and relating with others; (iv) *no limitations* in moving about and manipulating objects; (v) *less than marked* limitations in caring for yourself; and (vi) *no limitations* in health and physical well-being. (Tr. 60-69). Because Y.S.B. does not have an impairment or combination of impairments resulting in either *marked* limitations in two domains or an *extreme* limitation in one domain, Y.S.B.'s impairments do not functionally equal the severity of any listed impairments. Therefore, the ALJ determined that Y.S.B. was not disabled for purposes of Children's SSI benefits. (Tr. 69).

*Shannon Brown o/b/o Y.S.B.  v. Commissioner of Social Security*
Civil No. SAG-15-1683
February 5, 2016
Page 5

In making these findings, the ALJ carefully reviewed the evidence of record. With respect to Y.S.B.'s ability to acquire and use information, the ALJ noted that she generally performed well during an in-school intelligence evaluation in January, 2012. (Tr. 65). Specifically, he noted that Y.S.B. was able to "understand verbal information, think with words, and express her thoughts in words" during the verbal comprehension portion of the examination. The ALJ also cited the examiner's note that Y.S.B. "should not have difficulty understanding verbal information or processing information in the classroom setting." *Id.* In addition, Y.S.B. was able to solve nonverbal problems quickly with visual information and had age-appropriate scores in working memory, despite having some difficulty understanding questions and answers. *Id.*

In support of his finding that Y.S.B. had marked limitation in attending and completing tasks, the ALJ cited the findings of a school psychologist assessment stating that Y.S.B. "frequently got out of her seat, looked around the room, and wiggled in her chair." (Tr. 66). Further, the school psychologist found that Y.S.B.'s scores "were impacted by her distractibility" and recommended that she be given more time to complete tests and in-class assignments. *Id.* The ALJ also noted the examiners findings of Y.S.B.'s performance in processing speed tests. Y.S.B. was able to work steadily and without errors during the coding portion of the examination, but eventually became distracted and began to make errors. The school psychologist stated that the effort needed to maintain focus during these activities might "act as constraints on classroom activities such as written expression, note-taking, test-taking, and math-problem solving." *Id.*

With respect to interacting and relating with others, the ALJ found that Y.S.B. had less than marked limitations. He noted Y.S.B.'s participation in a Girl Scout troop in the past and teachers' reports that she had "no significant issues" in her ability to relate to other children, including participating in gym, recess, and field trips. (Tr. 67). The ALJ found that Y.S.B. had no limitation in moving about and manipulating objects. (Tr. 68). In support of this finding, the ALJ referred to evidence in the record that she is capable of riding a bicycle and cited a teacher's note that she did not require special assistance or devices to move about the school building and that she did okay in gym and on field trips. *Id.*

The ALJ cited similar evidence in finding that Y.S.B. had less than marked limitation in the ability to care for herself. Specifically, the ALJ cited notes from a doctor's examination that Y.S.B. was able to dress herself. (Tr. 68). Thus, the ALJ did not credit the hearing testimony that Y.S.B. was not capable of dressing herself. *Id.* Finally, in health and physical well-being, the ALJ found that Y.S.B. had no limitation. The ALJ again cited evidence that Y.S.B. participated in gym and noted that she took her medication on time. (Tr. 69). Accordingly, I find that the ALJ supported his findings that Y.S.B.'s impairments did not meet, medically equal, or functionally equal a listed impairment.

Thus, for the reasons given, this Court GRANTS the Commissioner's Motion for Summary Judgment, (ECF No. 19), and the Clerk is directed to CLOSE this case.

*Shannon Brown o/b/o Y.S.B.  v. Commissioner of Social Security*
Civil No. SAG-15-1683
February 5, 2016
Page 6

     Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

                                          Sincerely yours,

                                          /s/
                                          Stephanie A. Gallagher
                                          United States Magistrate Judge